U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 1 6 2005

ROBERT H. SHEMWELL, CLERK
BY_____
          DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **ELRICK J. GALLOW** | **CIVIL ACTION NO. 04-1905-LO** |
| **VS.** | **SECTION P** |
| **WARDEN LYNN COOPER** | **JUDGE MELANCON** |
| | **MAGISTRATE JUDGE METHVIN** |

## REPORT AND RECOMMENDATION

Before the court is Elrick J. Gallow's *pro se* petition for writ of *habeas corpus*

(28 U.S.C. §2254) filed on September 16, 2004. Gallow, an inmate in the custody of Louisiana's

Department of Public Safety and Corrections, is incarcerated at the Avoyelles Corrections

Center, Cottonport, Louisiana where he is serving hard labor sentences imposed following his

November, 1999 felony convictions in the Thirteenth Judicial District Court, Evangeline Parish,

Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation

in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

The original petition, its accompanying memorandum and exhibits, the amended

pleadings, motions, memoranda and exhibits, and the published jurisprudence of the State of

Louisiana establish the following relevant facts:

1. On November 23, 1999, petitioner pled guilty to one count of second degree

kidnapping and one count of second degree battery. In accordance with the terms of a plea

agreement, he was then sentenced to serve concurrent sentences of thirty and fifteen years. [Doc.

1, paragraph 3] Petitioner did not appeal. [Doc. 1, paragraph 6(a)]

2. On February 18, 2000, September 1, 2000, and September 6, 2000, petitioner filed "Motions to Withdraw Guilty Pleas;" on November 13, 2000 he filed a "Motion to Appear" and a "Motion for a Writ." On January 9, 2001, he filed a Motion for Writ of Habeas Corpus; on August 29, 2001 he filed an Application for Post-Conviction Relief. On October 2, 2001, he filed an Application for Writ of Habeas Corpus. On October 15, 2001 he filed another Application for Post-Conviction Relief. [Doc. 10, Exhibits, Docket History, Thirteenth Judicial District Court; see also Doc. 10, Exhibits A, B, C; Doc. 1, Exhibits ] Petitioner has not provided copies of all of the pleadings filed; however, it is assumed that he raised a single claim for relief through these proceedings – ineffective assistance of counsel (conflict of interest) which resulted in an involuntary guilty plea.[1]

On November 15-16, 2001, a hearing on the Application for Post-Conviction Relief/Motion to Withdraw Guilty Plea was convened. [See Doc. 1, Exhibits, Transcripts, November 15-16, 2001] Following the hearing, relief was denied. [*id.*, Exhibits, Judgment, November 16, 2001; see also Doc. 15-3; 15-4] The hearing was dismissed because petitioner did not produce any witnesses or any evidence in support of his conflict of interest claim. [*id.*]

3. On November 26, 2001, petitioner filed a Motion and Order for an Appeal. On January 15, 2002, the State filed a Motion to Dismiss the Appeal. On March 25, 2002, a hearing on the Motion to Dismiss the Appeal was convened in the District Court. Following the hearing, the

---

[1] See Doc. 10, Exhibit B, Motion to Withdraw Guilty Plea, "The defendant's guilty plea to second degree aggravated battery and second degree kidnapping was given improvidently and involuntarily because his trial counsel was laboring under serious conflict of interest that prevented him from rendering effective assistance of counsel to the defendant in violation of the defendant's Sixth Amendment right to assistance of counsel."

court granted the State's Motion and dismissed Gallow's appeal because he failed to pay the costs as required by Louisiana law. [Doc. 10, Exhibits, Docket History; See also Doc. 15-1 (Judgment Dismissing Appeal), 15-2 (Transcript of Hearing)]

On April 2, 2002 petitioner filed a Motion to Appeal the judgment dismissing his appeal. The motion was granted conditioned upon petitioner's payment of costs. [Doc. 10, Exhibits, Docket Sheet; see also Doc. 15-1, p. 4]

Thereafter, on July 30, 2002, petitioner filed a "Petition for Supervisory Writ of Review" in the Third Circuit Court of Appeals. This writ application was assigned Docket Number KH02-903. [Doc. 14-4, p. 6] On May 8, 2003, petitioner's writ application was denied. The Third Circuit, in denying the application, noted, "Relator was given an opportunity to present evidence in support of his claims which are not dispositive on the record alone. Relator failed to present evidence, which was subject to cross-examination, to prove his claims. Accordingly, we find no error in the trial court's ruling and deny his application." [See *State v. Gallow*, No. KH-02-00903 (La. App. 3d Cir. 5/8/2003); Doc. 14-1, p. 7]

On some undisclosed date petitioner applied for Supervisory or Remedial Writs with the Louisiana Supreme Court. On August 20, 2004, that court denied relief. See *State ex rel. Elrick J. Gallow v. State of Louisiana*, 2003-2310 (La. 8/20/2004), 882 So.2d 576.

4. Meanwhile, on October 17, 2003, petitioner filed a second Application for Post-Conviction Relief in the District Court. [Doc. 10, Docket Sheet [2]] That Application was denied as both repetitive and untimely on October 27, 2003. [Doc. 15-6, p. 9] On November 19, 2003 petitioner filed an application for supervisory writs in the Third Circuit which was docketed

---

[2] Petitioner has not provided a copy of this pleading.

under docket number KH03-1599. [Doc. 14-1, p. 8] On December 15, 2003, this writ application was denied. The Third Circuit noted, "There is no error in the trial court's ruling. See La. Code Crim.P. arts. 930.4 and 930.8[3] and *State v. Gallow*, an unpublished writ bearing docket number 02-903 (La. App. 3 Cir. 5/8/03)." See *State v. Gallow*, No. KH-03-1599 (La. App. 3d Cir. 12/15/2003), Doc. 14-1, p. 9]

Petitioner thereafter sought further review in the Louisiana Supreme Court. On March 18, 2005, that application was denied, the Supreme Court having found that the application was "Repetitive. Cf. La. C.Cr.P. art. 930.4(D)[4]." See *State ex rel. Elrick J. Gallow v. State*, 2004-0390 (La. 3/18/2005), 896 So.2d 992.

On January 27, 2004 petitioner filed an amended Application for Post-Conviction Relief. On June 25, 2004 he filed a third Application for Post-Conviction Relief. On July 9, 2004, his post-conviction applications were denied. [Doc. 10, Docket Sheet] On August 4, 2004 petitioner filed a notice of his intent to seek writs in the Third Circuit Court of Appeals. [*id.*][5] However, there is no evidence to suggest that petitioner perfected his writ application to that court. [See Doc. 14-1, p. 5, correspondence from the Third Circuit to petitioner dated July 11, 2005 which indicates that only two cases involving the petitioner were docketed by the Third Circuit Court of Appeals.]

---

[3] La. C.Cr.P. art. 930.8 provides a two year limitations period for filing an Application for Post-Conviction Relief. The period of limitations is generally calculated to begin when the judgment of conviction becomes final under Louisiana law.

[4] La. C.Cr.P. art. 930.4(D) provides: "A successive application [for post-conviction relief] may be dismissed if it fails to raise a new or different claim."

[5] Petitioner did not provide copies of any of these pleadings.

5. Petitioner's federal *habeas corpus* petition was signed and therefore should be considered to have been filed on September 14, 2004.[6] [Doc. 1] Petitioner raised the following claims for relief: (1) Petitioner was denied the right to compulsory process at the hearing on his Application for Post-Conviction Relief/Motion to Withdraw Guilty Plea on November 16, 2001 when neither "... the petitioner's defense attorney Dele Adebamjii, nor the court was able to have trial/plea counsel (witness) Ahmad Muhammad present in court when a [sic] order had been issued for his presence." [Doc. 1, Memorandum, p. 4] and (2) Ineffective assistance of trial counsel because "...counsel failed to appear six times in court during his pre-trial motion, and during petitioner's trial Mr. Muhammad notify [sic] the petitioner that he was involved with the victim's mother..." and therefore he "...refused to cross examine the victim because of this relationship he had with [the victim's] mother..." and therefore petitioner's guilty plea was a product of counsel's conflict of interest. [Doc. 1, Memorandum, p. 5]

6. On December 9, 2004, the undersigned completed initial review of the case and authored a Report recommending dismissal of petitioner's *habeas* claims as time barred by the one-year limitations period codified at 28 U.S.C. §2244(d).[7]

---

[6] In accordance with the "mailbox rule," that date is the earliest date upon which petitioner's pleadings could be said to have been filed. See *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), wherein a bright-line "mailbox rule" for *pro se* prisoners was established. The Supreme Court recognized that without a mailbox rule, prisoners acting *pro se* would be unduly prejudiced in their attempts to exercise their rights under the law: "Unskilled in law, unaided by counsel, and unable to leave the prison, [a prisoner's] control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access– the prison authorities–and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice." *Houston*, 487 U.S. at 271-72, 108 S.Ct. at 2382-83.

[7] The undersigned noted that petitioner's judgment of conviction became final sometime in early December, 1999 when the delays for filing an appeal under Louisiana law lapsed. The

On March 29, 2005 petitioner filed a Motion for Leave to Amend Petition [Doc. 9] and an Objection to the Report and Recommendation. [Doc. 10]

In the former Motion petitioner asked the court to allow him to amend his petition to add unspecified unexhausted claims.[8] Because these new claims were admittedly unexhausted, petitioner requested a stay of the federal proceedings pending the complete exhaustion of available state court remedies.[9]

In the latter document petitioner provided documentary evidence to substantiate his claim that requests for collateral review remained pending in the Louisiana courts since February, 2000. [Doc. 10 and Exhibits]

On June 14, 2005, Judge Melançon referred petitioner's Motion to Amend to the

---

undersigned further noted that according to the evidence submitted by the petitioner, he did not file an application for post-conviction relief until August, 2001, and by that time the one-year period of limitations codified at 28 U.S.C. §2244(d) had already lapsed. [See Doc. 6]

[8] Petitioner's motion did not specify the nature or substance of the unexhausted claims. The most specific statement in his Motion suggested that he desired to pursue claims based upon prosecutorial misconduct – "Unless petitioner be allowed to amend this petition with claims not yet exhausted, the prosecution will be rewarded for successfully suppressing the terms of the agreements made with its key witness ... In order for petitioner to enjoy meaningful access to this court, he should be allowed to amend his original petition ... to include the Fifth, Sixth, and Fourteenth Amendment violations generally named above, should the exhaustion of state court remedies prove unfruitful. As this claim of prosecutorial misconduct is currently being refined in a state-created vehicle, it would not be prudent to completely litigate same at this point." [Doc. 9, p. 2]

[9] *Habeas corpus* petitioners cannot collaterally attack state court convictions in federal court until all available state court remedies have been exhausted. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas*, 697 F.2d 697 (5th Cir. 1983). This requirement is not a jurisdictional bar but a procedural one erected in the interest of comity providing state courts first opportunity to pass upon and correct alleged constitutional violations. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438, 443 (1971); *Shute v. Texas*, 117 F.3d 233 (5th Cir. 1997). See also 28 U.S.C. § 2254(b)(1).

undersigned for further review. [Doc. 12] On June 17, 2005, the petitioner was ordered to amend his complaint to provide certain specific information. Among other things, petitioner was directed to provide copies of the pleadings relied upon to toll the running of the AEDPA limitations period along with copies of the judgments or orders disposing of these motions. With respect to petitioner's Motion to Amend, he was directed to amend and provide specific details of the unexhausted claims he now seeks to litigate. (He was also directed to address whether or not these claims would be barred by the timeliness provisions of Louisiana law or by the ban against successive petitions provided by La. C.Cr.P. art. 930.4. [Doc. 13])

On July 26, 2005 petitioner submitted an Amending Petition. In this pleading he alleged that co-defendant, Andrus Freeman, testified falsely at trial. He also alleged that he was in receipt of an affidavit executed by Freeman on July 24, 2003 which stated that Freeman had previously entered into an agreement with the prosecution to testify against the petitioner. Petitioner also alleged that on May 3, 2005, Freeman and his attorney, Alex Chapman, Jr. testified at an evidentiary hearing convened in response to one of petitioner's Applications for Post-Conviction Relief "...regarding any concession offered in exchange for Mr. Freeman's testimony...." He also alleged that despite the affidavit and testimony, the trial court denied relief because (1) petitioner should have raised the claim in a prior application; (2) that as a matter of fact there was no concession agreed upon for Freeman's testimony, and, (3) that since the petitioner pled guilty, the testimony of Freeman did not taint the trial jury. Petitioner claimed further, "The prosecution's allowance of the false testimony of its witness to go uncorrected, as well as the suppression of the agreement between the witness and the prosecution, violates the Constitution's guarantees of due process, as well as the right to a fair trial. This is also a significant factor in the decision of an

accused to enter a plea of guilty, implicating the violation of the Constitution's guarantees of a fair trial, the right to confront one's accusers, the freedom against self incrimination, and the assurance of due process." [Doc. 14-1]

Petitioner's Amended Petition added no new facts necessary for the resolution of this case. It was accompanied by dated copies of the cover sheets of the writ applications filed by the petitioner in the Third Circuit Court of Appeals and Louisiana Supreme Court; copies of the Third Circuit's orders, and . [Doc. 14] In a document entitled "Response to Order of Court" petitioner apparently addressed the issue of potential procedural bars claiming that the trial court's dismissal of his appeal and the failure to obtain the presence of his witness at the hearing on his application for post-conviction relief were the only potential procedural bars identified. [Doc. 15]

## LAW AND ANALYSIS

### A. Original Petition

### 1. Time Bar

### Claim Two – Ineffective Assistance of Counsel, Conflict of Interest, Involuntary Plea

This petition was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Therefore, the court must apply the provisions of AEDPA, including the timeliness provisions. *Villegas v. Johnson,* 184 F.3d 467, 468 (5th Cir. 8/9/1999); *In Re Smith,* 142 F.3d 832, 834, citing *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Title 28 U.S.C. §2244(d)(1)(A) was amended by AEDPA to provide a one-year statute of limitations for the filing of applications for writ of *habeas corpus* by persons in custody pursuant

to the judgment of a State court. This limitation period generally runs from "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." 28 U.S.C. §2244(d)(1)(A).[10]

However, the statutory tolling provision set forth in 28 U.S.C. §2244(d)(2) provides that the time during which a properly filed application for post-conviction relief or other collateral review was pending in state court is not counted toward the limitation period. *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). Any lapse of time before the proper filing of an application for post-conviction relief or other collateral review in state court is counted against the one-year limitation period. *Villegas,* 184 F.3d 467, citing *Flanagan v. Johnson,* 154 F.3d 196, 197 (5th Cir.1998).

Federal courts may raise the one-year time limitation *sua sponte. Kiser v. Johnson,* 163 F.3d 326 (5th Cir. 1999).

Petitioner did not appeal his conviction and sentence. For AEDPA purposes, petitioner's judgment of conviction and sentence "became final by the conclusion of direct review or the expiration of the time for seeking such review" [28 U.S.C. § 2244(d)(1)(A)], five days following

---

[10] Nothing in the record before the court suggests that any State created impediments prevented the filing of the petition. Further, nothing in the record suggests that petitioner is relying on a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review. Finally, as to this particular claim, petitioner does not claim reliance upon newly discovered facts. [See 28 U.S.C. § 2244(d)(1)(B), (C), and (D)].

the imposition of sentence[11] or, on or about December 3, 1999.[12] Under 28 U.S.C. § 2244(d)(1), petitioner had one year, or until December 3, 2000 to file his federal *habeas* petition.

Petitioner cannot rely upon the statutory tolling provisions of 28 U.S.C. §2244(d)(2) because he did not file an application for post-conviction relief or other post-conviction or collateral proceeding until August, 2001, and, by that time, the limitations period had long expired. As stated above, any lapse of time before the proper filing of an application for post-conviction relief in state court must be counted against the one-year limitation period. *Villegas,* 184 F.3d 467, citing *Flanagan v. Johnson,* 154 F.3d 196, 197 (5th Cir.1998).

Of course, petitioner, relying upon the Docket History [see Doc. 10 Exhibits], contends that the pleadings filed between February 18, 2000 and November 13, 2000 were sufficient to toll the limitations period. [See Doc. 10-1, "The crux of this objection is focused, not on any inaccuracies, but rather, on an understandable omission from consideration of a factual predicate, that of the Docket History of the 13th Judicial District Court of Louisiana ... Said report's case statement, at item #3 discloses the August 29, 2001 filing of an Application for Post-Conviction Relief and a Motion to Withdraw Guilty Plea ... A copy of the September 1, 2000 filing of a

---

[11] See La. C.Cr.P. art. 914(b)(1) which, at the time of petitioner's conviction, provided, "The motion for an appeal must be made no later than [f]ive days after the rendition of the judgment or ruling from which the appeal is taken." Art. 914 was amended by Act No. 949, § 1 of the 2003 Louisiana Legislature to extend the time period to thirty days.

[12] La. C.Cr.P. art. 13 provides: "In computing a period of time allowed or prescribed by law...the date of the act, event, or default after which the period begins to run is not to be included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday. ... A legal holiday is to be included in the computation ... except when ...the period is less than seven days." Petitioner was sentenced on November 23, 1999, a Tuesday. The five day delay for filing an appeal commenced on November 24 and since November 25-28 were probably holidays (Thanksgiving), the period expired on December 3, 1999.

Motion to Withdraw Guilty Plea prepared by Mr. Dele Adebamijii was attached to this application. This, however, was not the first 'request for collateral review' filed in the Louisiana district court. The Docket History from the Louisiana district court will adequately outline the action(s) of that court. There has continuously been requests for collateral review, properly filed, pending in Louisiana state courts, even to this very day, as of February 18, 2000."]

Petitioner's reliance is misplaced. Only "properly filed" applications for post-conviction relief or other collateral review serve to toll the limitations period provided by §2244(d). The docket history relied upon by petitioner establishes that the following pleadings were filed prior to the expiration of the limitations period on December 3, 2000: (1) a Motion to Withdraw Guilty Plea (2/18/2000); (2) a Motion to Withdraw Guilty Plea (9/1/2000); (3) a Motion and Order to Appear (11/13/2000); and, (4) a Motion and Order for Writ (11/15/2000). [See Doc. 10, Docket History]

Petitioner's two Motions to Withdraw Guilty Plea were clearly untimely under Louisiana law. La. C.Cr.P. art. 559 provides that a trial court may permit a defendant to withdraw a guilty plea "...at any time before sentence." Petitioner's motions, filed after the imposition of sentence, were therefore untimely under Louisiana law. Further, while Louisiana law permits the setting aside of a constitutionally infirm guilty plea, it may only be set aside by means of an appeal or an application for post-conviction relief. See *State v. West*, 97-1638 (La. App. 1st Cir. 5/15/98), 713 So.2d 693, 695 (citing *State v. Dixon*, 449 So.2d 463, 464 (La. 1984) and *State v. Shepherd*, 532 So.2d 474, 476 (La. App. 1st Cir. 1988)); see also *State v. Stewart*, 04-1231 (La. App. 5th Cir. 4/26/2005), 902 So.2d 440, 447-448 ("La. C.Cr.P. art. 559 contrary to the defense argument, does not apply to attempts to withdraw a guilty plea after sentencing... The Defendant has an

avenue to assert his claim that his guilty plea is constitutionally infirm through post-conviction procedures. Thus, we find that the trial court was correct in its ruling that the Defendant must assert his arguments regarding the constitutionality of his guilty plea through post-conviction procedures. La. C.Cr.P. art. 924 *et seq.*")

Petitioner has not provided the dispositions of these motions. It is impossible therefore to determine whether or not the state court rejected these motions as untimely. Nevertheless, even when a state court has not "clearly ruled" on the timeliness of a state petition, it becomes the responsibility of the federal *habeas* court to consider whether the state proceeding was timely filed as a matter of state law before tolling the AEDPA limitations period. See *Carey v. Saffold*, 536 U.S. 214, 226-27, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). As untimely filed motions, these pleadings were not "properly filed" and thus insufficient to toll the limitations period.[13]

---

[13] See, *Colbert v. Head*, 2005 WL 1953116 (11th Cir. August 16, 2005)(unpublished). This unpublished opinion of the Eleventh Circuit is not cited for any precedential value, but rather because its analysis is apropos to the case at bar.

In *Colbert*, the court considered a Georgia statute which is virtually identical to La. C.Cr.P. art. 559(A). The federal *habeas* petitioner acknowledged that his Motion to Withdraw Guilty Plea was untimely under Georgia law but argued that it was nevertheless a "properly filed application for post-conviction relief or other collateral review" within the meaning of §2244(d)(2). The Eleventh Circuit rejected this argument and in so doing framed the issue and recited the operative facts of the case as follows:

"The [United States District] court acknowledged that Colbert was arguing that his motion to withdraw his plea had tolled the time he had for filing his § 2254 petition. Moreover, the court, at least implicitly, assumed that this motion to withdraw his plea was an 'application for State post-conviction or other collateral review,' as defined in § 2244(d)(2). The court, however, determined that Colbert's 'tardy motion to withdraw a guilty plea after judgment ha[d] been pronounced' was not 'a properly filed application.' The court concluded, as such, that the motion did not toll the statute of limitations." *Colbert* at *2.

Thereafter, the Circuit Court made the following observations and conclusions: "[A]ssuming, as the district court appears to have done, that Colbert's motion to withdraw his plea was 'an

application' as defined by § 2244(d)(2), his motion was not 'properly filed.' 'Where the petition is not 'properly filed' there is no tolling of the one[-]year limitations period.'*Sibley v. Culliver*, 377 F.3d 1196, 1202 (11th Cir.2004) (quotation omitted). The Supreme Court has determined that 'an application is ' properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.' *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000).

*       *       *

The Supreme Court also recently has explained as follows: '[W]e are guided by the 'common usage' and 'commo[n] underst[anding]' of the phrase 'properly filed.' In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception. The purpose of [the] AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state post-conviction petitions. This would turn § 2244(d)(2) into a de facto extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.' *Pace v. Diguglielmo*, --- U.S. ----, 125 S.Ct. 1807, 1811-12, 161 L.Ed.2d 669 (2005) (internal quotations omitted). Thus, the Supreme Court concluded in *Pace* that, under the AEDPA, 'time limits, no matter their form, are 'filing' conditions.' *Id.* at ----, 125 S.Ct. at 1814.

*       *       *

Under Georgia law, a defendant may withdraw a guilty plea as a matter of right before his or her sentence is pronounced. O.C.G.A. § 17-7-93(b). Moreover, as discussed above, even after sentencing, the trial court has the discretion to allow the withdrawal of a plea. [citation omitted] However, '[i]t is well settled that when the term of court has expired in which a defendant was sentenced pursuant to a guilty plea[,] the trial court lacks jurisdiction to allow the withdrawal of the plea.' *Davis v. State*, 274 Ga. 865, 561 S.E.2d 119, 119 (Ga.2002). In that scenario, the only means available to a defendant to withdraw his guilty plea is through habeas corpus proceedings. *Id.* at 119-20. In addition, if the trial court has no jurisdiction to hear a matter, neither the state nor the defendant has the power or right to relax those jurisdictional rules so as to have the matter heard. See *Rodericus v. State*, 269 Ga.App. 665, 605 S.E.2d 81, 83 (Ga.Ct.App.2004) (concluding that habeas court's transfer of an appeal to the trial court to hear and decide the petitioner's out-of-time motion to withdraw his guilty plea was void as an unauthorized exercise of authority).

*       *       *

Accordingly, we conclude that Colbert's untimely motion to withdraw his plea of guilty was not a 'properly filed' application for state post-conviction relief that tolled the one-year time period for filing a § 2254 petition. See *Pace*, --- U.S. at ----, 125 S.Ct. at 1814; see also *Sibley*, 377 F.3d at 1202. The district court, therefore, did not err in dismissing as time-barred Colbert's § 2254 petition. We, therefore, affirm." *Colbert*, at *4-5

Since these untimely motions were not properly filed, they could not toll the AEDPA limitations period.[14] According to the best evidence available, there was no properly filed application for post-conviction relief or other collateral attack until January, 2001 when petitioner filed a Motion for *Habeas Corpus*. However, by that time the one-year limitations period established by §2244(d)(2) had lapsed.

The instant petition for writ of *habeas corpus,* filed after the expiration of the limitations period provided by § 2244(d)(1), is clearly subject to dismissal on that basis.

### 2. Rule 4 Considerations

### Claim One – Denial of Compulsory Process at the Post-Conviction Evidentiary Hearing

Petitioner also claims that he is entitled to *habeas corpus* because his right to compulsory process was denied at the November 2001 evidentiary hearings on his application for post-conviction relief. Pretermitting the issue of whether or not this claim is proper subject matter for a writ of *habeas corpus*, it appears from the record submitted by the petitioner that the claim lacks a factual basis.

The transcripts of the November 15 and 16, 2001 hearings were submitted by the petitioner as Exhibits attached to his original petition. [See Doc. 1, Exhibits, Transcripts] The

---

[14] Petitioner did not provide a copy of the "Motion and Order to Appear" which was filed on November 13, 2000. However, it cannot be assumed that this motion was other than ancillary to the Motions to Withdraw Guilty Plea. To the extent that petitioner's "Motion and Order for Writ" was a properly filed post-conviction pleading, this motion was denied on the same date that it was filed and thus could not serve to toll the limitations period for more than one day. [See Doc. 10 Exhibits, Docket History]

transcripts reveal that petitioner was represented by retained counsel, Mr. Dele Adebamiji at both hearings. At the outset, counsel advised the court that the petitioner's trial counsel, Mr. Muhammad, was a material witness and that he was not present at the hearing. The court inquired, "...did you subpoena him?" To which counsel replied, "Not officially Your Honor but the agreement was that Mr. Muhammad being an attorney too would be here today since he was the one who represented Mr. Gallow at the initial stage and there was no indication that he wasn't gonna [sic] be here today Judge until this morning."

The court then directed counsel to proceed with his case. Counsel refused and stated, "I'm not gonna [sic] put any evidence nor will I say, nor will I take part in the proceedings Your Honor."

The court then noted, "It's ... clear to me that counsel didn't see to it that Mr. Muhammad was brought over here, either by subpoena or otherwise, he didn't do it, it was his obligation, so this is what I'm doing, I'm ordering ... the hearing to start right now ..."

After allowing counsel an opportunity to contact Muhammad by telephone, the court recessed the hearing to the following day. [Doc. 1, Exhibits, Transcript]

On November 16, counsel again moved for a continuance of the hearing based on Muhammad's absence. The court made the following observations, "... you filed this motion on August 29th... Today is November the 16th, alright that's three months... You had time to prepare for this case. It was your business to get your material witness here, you knew who your material witness was, didn't you, you knew it was Mr. Muhammad? ... Why didn't you see about it, I ... looked in this file yesterday afternoon, you have never requested his presence over here, you've never ordered a subpoena and you were notified since August that this, about this hearing, now

what is your excuse?" [*id.*, Transcript, November 16, 2001]

In short, it is clear from the record submitted by the petitioner that he was not denied the right to compulsory process; rather, it appears that he did not avail himself of that right. Neither petitioner nor his retained post-conviction counsel ever requested a subpoena for Mr. Muhammad.

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." (See also *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999), "The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.' 28 U.S.C. foll. § 2254 Rule 4 Advisory committee Notes.")

Since petitioner's compulsory process claim is clearly without a factual basis, dismissal pursuant to Rule 4 is appropriate.

### 3. Petitioner's Amended Petition [Doc. 14-1] and His Request for Stay [Doc. 9]

Petitioner has sought to amend his petition to include an additional claim for relief which by his own admission remains unexhausted. He previously requested a stay of these proceedings to allow him to exhaust state court remedies with respect to this additional claim for relief. He contends that his co-defendant, Andrus Freeman, testified falsely at petitioner's trial; he also claims that Freeman received some unspecified "concession" from the prosecution in return for

his favorable testimony against the petitioner. He claims that the prosecution allowed the

testimony to go uncorrected and "suppressed" the existence of their agreement with Freeman. He

claims that this "false testimony" impacted the voluntariness of the guilty plea. Finally, he

claims that he filed his post-conviction application in state court within one year of the discovery

of this evidence and that while the claim was rejected by the district court, it remains pending in

either the court of appeals or the Louisiana Supreme Court. [See Doc. 14-1]

Since the Louisiana Supreme Court has not had the opportunity to review this claim it

remains, as petitioner himself concedes, unexhausted. See *Magouirk v. Phillips*, 144 F.3d 348

(5th Cir. 1998), citing *Richardson v. Procunier*, 762 F.2d 429, 431-432 (5th Cir. 1985); see also

*O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)(In order to satisfy

the exhaustion requirement, the claim in question must have been fairly presented to the state's

highest court, even when review by that court is discretionary.) Petitioner therefore requests a

stay of the federal proceedings to allow him to complete the litigation of this claim in the

Louisiana courts.

In *Rhines v. Weber*, — U.S. —, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), the Supreme

Court held that the United States District Courts have discretion to stay mixed *habeas corpus*

petitions in order to allow petitioners the opportunity to present unexhausted claims to the state

courts. This process allows petitioners to return to federal court once the exhaustion process has

been completed thus eliminating AEDPA limitations and abuse of the writ issues. The Court

however cautioned that this "...stay and abeyance should be available only in limited

circumstances... and ... is only appropriate when the district court determines there was good

cause for the petitioner's failure to exhaust his claims first in state court... " *Rhines v. Weber*, 125

S.Ct. at 1535.

Of course, as noted above, the purpose of this "stay and abeyance procedure" is to permit the tolling of the limitations period while a petitioner completes the exhaustion process in state court. The stay and abeyance allow such petitioners to return to federal court without running the risk of presenting time-barred claims. Such is not the case herein. As is shown above, petitioner's original petition raised claims that were already time-barred, and dismissal on that basis has been recommended. It would serve no useful purpose to stay these proceedings because these additional claims are also already time-barred.

Petitioner suggests that these claims fall under the "newly discovered evidence" exception. Unfortunately, the federal *habeas* statute contains no such exception. 28 U.S.C. §2244(d)(1)(D) provides an alternative date for reckoning the federal limitations period. The statute provides, "The limitation period shall run from ... the date on which the <u>factual predicate</u> of the claim or claims presented <u>could have been discovered</u> through the exercise of due diligence..." Petitioner claims that the <u>evidence</u> he now relies upon was "withheld by [the] prosecution..." [Doc. 14-1] To the extent that petitioner relies upon the belated discovery of evidence to extend the § 2244(d)(1) limitations period, his reliance is misplaced. Petitioner confuses his <u>knowledge</u> of the factual predicate of his claim with the time permitted for gathering the evidence to support his claim. The factual predicate of his claim for relief is essentially a claim that his co-defendant, Andrus Freeman "testified falsely for the prosecution and against petitioner..." It stands to reason that petitioner was "aware" that this testimony was false at the time of the aborted trial in November, 1999. In fact, his knowledge of the factual predicate of this claim actually predates the date of finality of judgment. As to his additional claim that the

prosecution offered a concession to the co-defendant in return for the unfavorable testimony, the factual basis of that claim was likewise known (or at least could have been discovered) by the petitioner at the time of his plea or shortly thereafter. In fact, petitioener alludes to the fact that he suspected some concession all along. In his Amending Petition, Gallow argued, "Prevailing professional norms would mandate that some form of concession be secured before allowing a defendant to incriminate himself and the deference afforded trial counsel's performance should be read to infer that a concession was obtained rather than not, where all testimony indicates such." [Doc. 14-1]

In short, whatever "evidence" petitioner claims was withheld by the prosecution formed no part of the <u>factual predicate</u> to petitioner's unexhausted claims for relief. His contention that the one-year period of limitations did not begin to run until such unspecified date when he allegedly <u>discovered the evidence which supported the factual basis</u> of the claim above is without merit. Section 2244(d)(1)(D) does not convey a statutory right to an extended delay while a *habeas* petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim. *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998).

### Conclusion

In short, petitioner's claim that his guilty plea was involuntary due to the ineffective assistance of counsel who labored under a conflict of interest is clearly and unequivocally time-barred. His claim that he was denied the right to compulsory process at the hearing on his application for post-conviction relief is refuted by the transcript of the hearings and is thus subject to dismissal in accordance with Rule 4 of the Rules Governing §2254 cases.

His request to amend his pleading and to stay these proceedings is also without merit. The

claims he seeks to litigate in his amended petition are, by his own admission, not exhausted. He is not entitled to a stay of these proceedings because these claims are also time-barred.

Accordingly,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** because petitioner's claim (ineffective assistance of counsel/conflict of interest/involuntary guilty plea ) set forth as Claim Two in his Original Petition is barred by the one-year limitation period codified at 28 U.S.C. §2244(d);

**IT IS FURTHER RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases because it plainly appears from the face of the petition and the exhibits annexed to it that the petitioner is not entitled to relief in the district court with respect to the claim (denial of his right to compulsory process) which is set forth as Claim One in his Original Petition;

**IT IS FURTHER RECOMMENDED** that petitioner's Motion to Amend/Correct Petition for Writ of Habeas Corpus [Doc. 9], his Amended Complaint [Doc. 14], and the pleading styled "Response" [Doc. 15] and the requests for stay and abeyance associated with said pleadings be **DENIED.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers at Lafayette, Louisiana, this *16* day of *September* , 2005.

COPY SENT:
DATE: 9-16-05
BY: CW
TO: MEM
TUM/PS

**MILDRED E. METHVIN**
**UNITED STATES MAGISTRATE JUDGE**