UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

ELRICK J. GALLOW                    CIVIL ACTION NO. 04-1905

VS.                                 SECTION P

WARDEN LYNN COOPER                  JUDGE MELANCON

                                    MAGISTRATE JUDGE HANNA

<u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Elrick J. Gallow's petition for writ of *habeas corpus* (28 U.S.C. §2254) which was filed September 16, 2004. Petitioner, an inmate in the custody of Louisiana's Department of Public Safety and Corrections, attacks his 1999 felony convictions in Louisiana's Thirteenth Judicial District Court. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons, it is recommended that the petition be **DISMISSED WITH PREJUDICE.**

*Background*

On April 27, 1999 petitioner was indicted by the Evangeline Parish Grand Jury and charged with aggravated second degree battery (La. R.S.14:34.7), armed robbery (La. R.S.14:64), and second degree kidnaping (La. R.S.14:44.1). [SCR Vol. 1, pp. 1,  26-27] On May 21, 1999, he appeared for arraignment represented by retained counsel, Mr. Ahmad Muhammad of Mississippi and Mr. Dele A. Adebamiji of Baton Rouge. Counsel entered not guilty pleas on petitioner's behalf. [SCR Vol. 1, p. 2; Vol. 4, pp. 792-795]

Petitioner's trial commenced on November 22, 1999 and proceeded into the next day. [SCR

Vol. 4, pp. 802-1000; Vol. 5, pp. 1001-1122] On November 23, 1999, after the State had called the victim, Lorenzo Frank, to the stand, petitioner and his attorney, Mr. Muhammad, asked for a recess, and, upon their return advised the Court of their intention to enter into a plea agreement. Under the terms of the plea agreement, the State dismissed the armed robbery charge and petitioner pled guilty to aggravated second degree battery and second degree kidnaping.  Previously agreed to concurrent sentences of 15 and 30 years were then imposed. [SCR Vol. 5, pp. 1123-1134] Petitioner did not appeal.

Sometime prior to March 3, 2000, petitioner filed a *pro se* Motion for Production of Sentencing Transcripts in which he alleged, "Movant contends that his guilty plea is invalid and unconstitutional, to wit, he did not knowingly, intelligently and voluntarily waive his rights pursuant to the standards of law in that there were in fact certain terminology of law used that he could not understand, and that he plans to attack his guilty plea through post-conviction relief and that he is entitled to any and all documents ..."  The motion was granted on March 3, 2000 and the Clerk of Court mailed the documents to the petitioner on June 21, 2000. [SCR, Vol. 2, pp 282]

On February 18, 2000 petitioner filed a *pro se* Motion to Withdraw Guilty Plea. According to petitioner, this motion was accompanied by an affidavit executed by Mr. Muhammad wherein Muhammad conceded that he provided ineffective assistance of counsel.[1]

---

[1] The motion and affidavit do not appear in the State Court Record and petitioner was unable to produce a copy of the motion or the original affidavit. However, the petitioner produced a "Docket History" prepared by Dy. Clerk of Court Tina C. Fontenot on February 7, 2005 and the Docket History confirms that a Motion to Withdraw was filed by petitioner on February 18, 2000. [Doc. 10, Manual Attachment, "Docket History"; the document was also part of the SCR at Vol. 3, pp. 594-596]

Subsequent transcripts suggest that the Court and the prosecutor had access to the affidavit at some point in time. [See SCR Vol. 5, pp. 1161-1162] In any event, petitioner has provided what purports to be "an exact duplicate of the affidavit which was attached to the motion to withdraw guilt plea on February 18, 2000..." [see rec. doc. 46, p. 7, fn 2] This new affidavit was purportedly executed on October 26, 2006. [see rec. doc. 46, pp. 24-25] The affidavit was

2

On September 1, 2000, petitioner's attorney, Mr. Adebamiji filed another Motion to Withdraw Guilty Plea claiming that the plea "... was given improvidently and involuntarily because his trial counsel was laboring under serious conflict of interest that prevented him from rendering effective assistance of counsel..." He also alleged that "... counsel failed to inform [petitioner] that he has had a close familial relationship with Phyllis Frank, the mother of the alleged victim in this case, Lorenzo Frank, to the extent that it compromised his representation of the defendant in this matter because of divided loyalties." He also alleged that "... counsel failed to advise the defendant that he would be unable to cross-examine Lorenzo Frank ... because of his divided loyalties between the defendant's interest and the victim's interest..." [SCR Vol. 2, pp 286-289]

On October 5, 2000 a hearing was convened. Since Mr. Adebamiji neglected to secure the presence of petitioner, the hearing was continued to December 1, 2000.  [SCR Vol. 5, pp. 1135-1138] Sometime in late November, Mr. Adebamiji filed a motion for a continuance however, the motion was denied. [SCR, Vol. 2, pp. 297-299] Nevertheless, on December 1, 2000, neither Adebamiji nor petitioner were present in court and the hearing was continued without date. [SCR, Vol. 5, pp. 1139-1141]

On August 29, 2001,  Mr. Adebamiji filed an application for post-conviction relief on behalf of petitioner. A second application was filed on October 15, 2001; this application was signed by both petitioner and his attorney. These pleadings raised the same claims and were based on the same allegations of fact and conclusions of law contained in  the previously filed motions to withdraw

---

also submitted as an exhibit in an application for post-conviction relief filed in January 2007. [SCR Vol. 3, pp. 669-670]

In any event, petitioner's subsequent attempts to obtain a copy of the affidavit were unsuccessful and on May 18, 2005, the District Court Judge affirmed that the affidavit was "... not part of the record and the Clerk is unable to locate it." [SCR Vol. 3, p. 616]

guilty plea. [SCR Vol. 2, pp. 303-321; 325-343]

A hearing on the application was fixed for November 15, 2001. [SCR Vol. 2, p. 346-347] The hearing was convened on November 15, 2001. On that date Mr. Adebamiji advised the court that Muhammad was a "material witness" but he was not present. Adebamiji conceded that he had not issued a subpoena for Mr. Muhammad.  The Court instructed Mr. Adebamiji to return the next day and be prepared to conduct the hearing. [SCR, Vol. 5, pp. 1142-1151] On the following day when Mr. Muhammad again did not appear, Mr. Adebamiji requested another continuance. When that was denied, Adebamiji advised the court that he would not go forward without that witness and the Court ordered the action dismissed. [SCR Vol. 5, pp. 1152-1165] On the same date, the district court judge singed a judgment denying both applications with prejudice. [SCR Vol. 2, p. 348]

On November 26, 2001, Mr. Adebamiji filed a "Motion and Order for Appeal." The motion was granted on the following day. [SCR Vol. 2, p. 352] Petitioner sought to proceed *in forma pauperis* on appeal [SCR, Vol. 2, pp. 353-373] however, a hearing was convened on March 25, 2002 and, at that hearing, the trial court determined that petitioner was not eligible to proceed *in forma pauperis*, that the costs for preparing the hearing transcripts had not been forwarded, and therefore the court ordered the appeal dismissed. [SCR Vol. 5, pp. 1166-1172]  Mr. Adebamiji moved for an appeal of that order. [SCR Vol. 2, pp. 375-376] A hearing was convened on May 6, 2002 and the second appeal was also dismissed. In addition, Mr. Adebamiji withdrew his representation of the petitioner. [SCR Vol. 5, pp. 1173-1177]

On July 31, 2002 petitioner filed a *pro se* writ application with the Third Circuit Court of Appeals. The application was assigned Docket Number 02-00903-KH. [SCR Vol. 2, p. 397] On May 8, 2003 petitioner's writ application was denied by the Third Circuit as follows, "Relator was given

4

an opportunity to present evidence in support of his claims which are not dispositive on the record alone. Relator failed to present evidence, which was subject to cross-examination to prove his claims. Accordingly, we find no error in the trial court's ruling and deny his application." *State of Louisiana v. Elrick Gallow*, No. KH 02-00903 [SCR Vol. 2, p. 410].

Petitioner sought review of that judgment in the Louisiana Supreme Court. He mailed his writ application on August 1, 2003; it was received and filed on August 14, 2003 and assigned Docket Number 2003-KH-2310. [SCR Vol. 2, p. 411] It was ultimately denied without comment on August 20, 2004. *State of Louisiana ex rel. Elrick J. Gallow  v. State of Louisiana*, 2003-KH-2310 (La. 8/20/2004),  882 So.2d 576. [SCR Vol. 3, p. 575]

On October 17, 2003 he filed another application for post-conviction relief in the district court. [SCR Vol. 2, pp. 412-467] On October 27, 2003 the District Court denied the application for post-conviction relief as successive and time-barred. [SCR Vol. 2 p. 468]

On November 20, 2003 petitioner filed a *pro se* writ application in the Third Circuit Court of Appeals. That application was assigned Docket Number 03-01599-KH. [SCR Vol. 2, p. 469] On December 15, 2003 the Third Circuit denied writs as follows, "There is no error in the trial court's ruling. See La. Code Crim.P arts. 930.4 and 930.8 and *State v. Gallow*, an unpublished writ bearing docket number 02-903 (La. App. 3 Cir. 5/8/03)." [SCR Vol. 2, p. 470] Petitioner apparently sought writs in the Louisiana Supreme Court and on March 18, 2005 the writ application was denied as repetitive pursuant to  La. C.Cr.P. art. 930.4(D). *State of Louisiana ex rel. Elrick J. Gallow v. State of Louisiana*, 2004-KH-0390 (La. 3/18/2005), 896 So.2d 992.

Sometime in 2001, petitioner apparently filed a motion "to reopen" his application for post-conviction relief. [SCR Vol. 2, pp. 473-500 –  Vol 3, p. 520] Petitioner apparently re-urged this

pleading in a writ application filed in the Third Circuit on May 11, 2004 and assigned Docket

Number 04-00644-KH. [SCR Vol. 2, p. 471] On June 9, 2004 the Third Circuit granted writs noting

that the Evangeline Parish Clerk of Court had affirmed that the pleading was filed sometime in 2001.

The matter was remanded for disposition. The trial court was ordered to rule on the application to

amend within 20 days of the date of the order. *State of Louisiana v. Elrick J. Gallow*, KH 04-00644.

[SCR Vol. 2, p. 472]

On June 23, 2004 an evidentiary hearing was convened in accordance with the Third

Circuit's order. Petitioner's request for appointment of counsel was granted and the matter was

continued until July 9, 2004 to enable counsel to review the record. [SCR Vol. 5, pp. 1178-1187]

On July 9, 2004 the hearing was reconvened and at its conclusion relief was denied. [SCR Vol. 5,

pp. 1188-1200] At that hearing, petitioner faulted Mr. Adebamiji for failing to secure Mr.

Muhammad's presence at the original post-conviction hearing. [*Id*.; p. 1195] When the Court

attempted to clarify whether petitioner was claiming ineffective assistance of trial counsel or

ineffective assistance of post-conviction counsel, petitioner's newly appointed post-conviction

counsel affirmed the trial court's suspicion that petitioner was alleging ineffective assistance of post-

conviction counsel.  The prosecutor then noted,

> That's correct judge and his Post Conviction Relief is gonna have [sic] to attack what
> he was convicted of, not, not the Post-Conviction hearing, I mean we could just run
> this on forever, you know the Judge is well aware that Deli [sic] and Muhammad
> were associates, I don't know if they practiced together, they were associates, he's
> represented by  counsel at the Post Conviction Hearing, he's represented by hired
> counsel, he comes here on two days and he failed to present evidence and they, and
> the Third Circuit has already ruled on that, that he has failed to present evidence to
> prove his claim, therefore he waived all of this and they found no error in the Trial
> Court's ruling and denied his Application. Now, to re-open that can of worms, which
> he is asking to do, is something that the Third Circuit said was a proper, was a proper
> hearing and everything that's filed Judge, there's nothing different, it's all directed

at Mr. Muhammad which he failed to present evidence on and he never took the stand, he never brought any other witnesses, whether it was Muhammad or anybody else, presented absolutely nothing. The Third Circuit said that was his choice and it's okay, I don't think that should be (inaudible) and this should not be re-opened because then it would never end ever on any Post-Conviction. [*Id.*, p. 1196]

At the conclusion of those arguments, the Court apparently agreed with the prosecutor's assessment and noted, "Well, this thing is going [to] go on forever. I'm going to deny the Application. I'm going to deny your request for continuance." [*Id.*, p. 1197]

Meanwhile, on June 24, 2004 petitioner filed yet another application for post-conviction relief. This pleading raised the issue of newly discovered evidence concerning the testimony of petitioner's co-defendants at trial. [SCR Vol. 3, pp. 521-573]

Petitioner then filed the instant petition for writ of *habeas corpus* on September 16, 2004. [rec. doc. 1] He argued two claims for relief: (1) ineffective assistance of counsel; and (2) the denial of petitioner's right to compulsory process at a post-trial evidentiary hearing. In a subsequent pleading petitioner sought to add the unexhausted claims concerning the testimony of his co-defendants, and, he requested a stay so that he could complete the exhaustion process in the Louisiana courts. On September 16, 2005 United States Magistrate Judge Mildred E. Methvin authored a Report recommending dismissal of petitioner's ineffective assistance of counsel claim as time-barred[2] and recommending dismissal of petitioner's compulsory process claim as having no

---

[2] The Report concluded that petitioner's judgment of conviction became final by the expiration of the time for seeking direct review (28 U.S.C. §2244(d)(1)(A)) five days, exclusive of holidays, after sentencing, or on or about December 3, 1999. The Report further observed that pursuant to the statute, petitioner had one year or until December 3, 2000 to file his federal *habeas* petition. Finally, the Report concluded that petitioner could not claim the benefits of statutory tolling since the Motions to Withdraw Guilty Pleas filed by petitioner on February 18, 2000 and September 1, 2000 were untimely under Louisiana law (see La. C.Cr.P. art. 559(A), a motion to withdraw guilty plea must ordinarily be filed prior to the imposition of sentence) and therefore not properly filed as required by 28 U.S.C. §2244(d)(2) and as defined by Supreme Court jurisprudence. See *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005). [rec. doc. 16]

factual basis. The Report also recommended that petitioner's Motion to Amend/Correct, his Amended Complaint, "Response", and the motion for stay be denied. [rec. doc. 16] On October 11, 2005 the District Court adopted the recommendation and ordered dismissal of the petition and denial of the associated motions, amendments, and stay request. [rec. doc. 18]

Petitioner appealed this judgment to the United States Fifth Circuit Court of Appeals. On December 19, 2006 the Fifth Circuit granted a Certificate of Appealability (COA) with respect to petitioner's ineffective assistance of counsel claim.  A COA was denied on petitioner's compulsory process claim, and, since petitioner did not appeal the denial of his request for leave to amend and his request for a stay, those claims were deemed abandoned.  [rec. doc. 30] On December 30, 2008 the Fifth Circuit issued its judgment as mandate with regard to the effective assistance of counsel claim,  remanding the matter "... for consideration of the length of time that Gallow's motions to withdraw guilty plea were pending,[3] whether any were successive, and considerations of any further issues regarding these or other filings, dispositions or matters that bear on the timeliness of Gallow's §2254 application." [*See Gallow v. Cooper, Warden*, No. 05-31015 at rec. doc. 32]

Meanwhile, petitioner apparently filed a writ application in Louisiana's Third Circuit Court of Appeal on January 18, 2005 asking the Court to order the District Court to rule on his application. That writ application was assigned Docket Number KH05-00063 and on March 2, 2005 the Third Circuit denied writs noting that a hearing was scheduled for March 24, 2005. *State of Louisiana v. Elrick J. Gallow*, KH 05-00063 (La. App. 3/2/2005). [SCR Vol. 3, p. 602] The hearing was

---

[3] The Fifth Circuit, citing *State ex rel. Clark v. Marullo*, 352 So.2d 223, 227 (La. 1977), opined that under Louisiana law, such motions may be considered after the imposition of sentence if constitutional infirmity is alleged; therefore, the Court concluded, "Based on controlling Louisiana Supreme Court precedent, we conclude that a motion to withdraw a guilty plea filed after sentencing ... can be considered properly filed as a post-conviction motion and can commence tolling the one-year statute of limitations on the date filed." See *Gallow v. Warden*, No. 05-31015 (5th Cir. 2009) at rec. doc. 32, pp. 5-6.

ultimately convened on May 3, 2005 and at the conclusion of the hearing the court denied relief. [SCR Vol 5, pp. 1201-1249]

On October 29, 2005 petitioner filed a Motion to Amend or Modify Sentence based on claims that the original sentence was excessive and petitioner had undergone a "transformation" while incarcerated. [SCR Vol. 3, pp. 617-634] A hearing was convened on December 1, 2005 and relief was denied. [SCR Vol. 5, pp. 1250-1256]

On some unspecified date petitioner sought review of another judgment by filing writs in the Third Circuit under that Court's Docket Number KH 05-0078.  When the Third Circuit denied relief he filed a writ application in the Supreme Court on February 1, 2005. That writ application was assigned Docket Number 2006-KH-0245. [SCR Vol. 3, p. 636] It was denied without comment on June 23, 2006. [*State of Louisiana ex rel. Elrick J. Gallow v. State of Louisiana*, 2006-KH-0245 (La. 6/23/2006), 930 So.2d 970; SCR Vol. 3, p. 642]

In May 2006 petitioner filed a pleading seeking the production of the District Attorney's file pursuant to Louisiana's Public Records law, La. R.S.44:1 *et seq.* [SCR Vol. 3, pp. 637-641] The pleading was denied without comment on June 12, 2006. [SCR Vol. 3, p. 641] On July 6, 2006 petitioner sought writs in the Third Circuit; his application was assigned Docket Number 06-00847-CW. [SCR Vol. 3, p. 643] On July 13, 2006 a hearing was convened and it was again determined that petitioner was not entitled to a free copy of the DA's file. [SCR Vol. 5, pp. 1257-1262] On September 20, 2006 the Third Circuit denied writs finding no error in the trial court's ruling and finding that petitioner's request was procedurally improper. *State of Louisiana v. Elrick J. Gallow,* No. CW 06-00847 (La. App. 3 Cir. 9/20/2006). [SCR Vol. 3, p. 651]

On January 11, 2007 petitioner filed yet another application for post-conviction relief again

arguing that his plea was involuntary based on counsel's conflict of interest. [SCR Vol. 3, pp. 658-690] The application was denied without comment on January 22, 2007. [SCR Vol. 3, p. 666] On February 16, 2007 petitioner applied for writs in the Third Circuit and his writ application was assigned Docket Number 07-00197-KH. [SCR. Vol. 3, p. 691] On April 12, 2007 the writ was denied. *State of Louisiana v. Elrick J. Gallow*, KH 07-00197 (La. App. 3 Cir. 4/12/2007) [SCR Vol. 3, p. 692] In a pleading post-marked June 15, 2007 and received and filed July 5, 2007, petitioner sought review in the Supreme Court in a writ application assigned Docket Number 2007-KH-1368. [SCR Vol. 3, p. 696] On March 28, 2008 the writ was denied. *State ex rel. Elrick J. Gallow v. State of Louisiana*, 2007-1368 (La. 3/28/2008), 978 So.2d 302.

On January 3, 2008 petitioner filed yet another Motion to Withdraw Guilty Plea. [SCR Vol. 3, pp. 697-706] It was denied on January 15, 2008 as duplicative. [SCR Vol. 3, p. 702]

On February 7, 2008 petitioner filed yet another Application for Post-Conviction Relief in the District Court. In this pleading petitioner argued that he was not advised of his right to testify on his own behalf. [SCR Vol. 3, pp. 707-733] That pleading was also denied as duplicative on February 14, 2008. [SCR Vol. 3, p. 717]

On May 22, 2008 and thereafter, petitioner again sought production of documents. [SCR Vol. 3, pp. 735-750- Vol. 4- 782] At each instance relief was denied. [*Id.*]

On February 5, 2009 another hearing was convened.  An attorney was appointed to represent petitioner and to obtain the presence of Mr. Muhammad at a future hearing.  [SCR Vol. 5, pp. 1263-1267] On March 19, 2009, the hearing was continued without date because the Court was unsuccessful in obtaining the presence of Mr. Muhammad from the Federal Detention Center, Oakdale. [SCR Vol. 5, pp. 1268-1272]

On November 4, 2009, the Respondent, through the Evangeline Parish District Attorney, filed an Answer to the instant petition for writ of *habeas corpus*; respondent once again argued that the petition was time-barred because the Motions to Withdraw Guilty Plea, since they were filed after the imposition of sentence,  were untimely, and therefore could not serve to toll limitations. Respondent also argued that since the motions were "passed without date" they were no longer pending during the time period preceding the filing of this petition. [rec. doc. 45]

On November 19, 2009 petitioner filed a "Motion in Opposition to the State's Answer & Memorandum to the Petition for Writ of Habeas Corpus." [rec. doc. 46] Petitioner took issue with the respondent's arguments concerning time bar and, among other things noted, "Due to circumstances outside the control of Gallow, none of the issues presented in either [of] his Motion(s) to Withdraw Guilty Plea or Application(s) for Post Conviction Relief were ever adjudicated on the merits in the state trial court." [rec. doc. 46, p. 17]

### *Law and Analysis*

This petition was filed after the April 1996 effective date of the Anti-terrorism and Effective Death Penalty Act or AEDPA[4] and therefore federal *habeas corpus* review is governed by the provisions of the Act including those  provisions codified at §2244(d) (time-bar), §2254(d)(1) and (2) (standard for review), and §2254(e) (evidentiary hearing).

### *1. Time-Bar (28 U.S.C. §2244(d))*

This case was originally dismissed as time-barred by the provisions of 28 U.S.C. §2244(d)(1)(A). The Court concluded that petitioner's Motions to Withdraw Guilty Pleas, having been filed after sentencing, could not serve to toll limitations pursuant to §2244(d)(2). That

---

[4] Pub.L. No. 104-132, 100 Stat. 1214 (codified as amended at 28 U.S.C. § 2254).

conclusion was, of course, rejected by the Fifth Circuit Court of Appeals.  On remand, the respondent was directed to provide additional evidence and argument on the issue.  On September 21, 2009 United States Magistrate Judge Mildred E. Methvin examined the respondent's response and made the following observations:

> Respondent maintains that the Motions to Withdraw Guilty Plea could not serve to toll limitations because they were untimely pursuant to La. C.Cr.P. art. 559(A), however, that argument was rejected by the Fifth Circuit Court of Appeals and that court's determination that the motions were 'properly filed' state post-conviction motions sufficient to toll limitations pursuant to §2244(d)(2) is now the law of this case.  See *Goodwin v. Johnson*, 224 F.3d 450, 457 (5th Cir.2000) (The law-of-the-case doctrine provides that an explicit or necessarily implied resolution of a legal issue by an appellate court becomes that case's law and is to be followed in the subsequent proceedings in the case.)

> Respondent also suggests that these Motions ceased to be pending pursuant to §2244(d)(2) as of December 1, 2000  when the State's motion to continue or pass the motions without date was granted.  Petitioner, of course, disputes this theory and suggests that the motions remain pending and were not even resolved by the District Court's denial of petitioner's applications for post-conviction relief in November 16, 2001. The parties should more fully brief this issue and cite relevant Louisiana and Federal statutes and jurisprudence in support of their respective positions.  [rec. doc. 41]

On November 4, 2009, the Respondent filed an Answer again asserting that the petition was time-barred because the Motions to Withdraw Guilty Plea, since they were filed after the imposition of sentence,  were untimely, and therefore could not serve to toll limitations. Respondent also argued that since the motions were "passed without date" they were no longer pending during the time period preceding the filing of this petition. [rec. doc. 45]

As noted by Magistrate Judge Methvin, the Fifth Circuit previously determined that petitioner's Motions to Withdraw Guilty Pleas were in fact timely applications for post-conviction relief and thus  tolled limitations pursuant to 28 U.S.C. §2244(d)(2). Respondent again invites the

court to hold otherwise, however, as noted previously, this finding is now the law of the case and this Court is not free to disregard the Fifth Circuit's conclusion.

Further, the respondent suggests that the State Court's order continuing these proceedings without date, served to terminate the proceedings. However, the Respondent offers nothing to support the notion that litigation is terminated when it is "continued without date."

The State Court Record has been thoroughly examined. Based upon the record thus far supplied, the undersigned must conclude that the petition is timely and therefore, the respondent's motion to dismiss should be denied.

### 2. Title 28 U.S.C. §2254(d)

Petitioner presented  his ineffective assistance of counsel/conflict of interest/involuntary guilty plea claims first in his motions to withdraw guilty plea [SCR Vol. 2, pp. 286-289; see also fn.1, *supra*] and then later in his first applications for post-conviction relief.  [SCR Vol. 2, pp. 303-321; 325-343]

The District Court did not consider the merits of those claims when they were raised in the context of the motions to withdraw guilty plea and instead, continued the hearings on those motions without date when petitioner and his retained attorney failed to appear as directed. [SCR Vol. 5, pp. 1139-1141]

However, petitioner's applications for post-conviction relief filed on August 29, 2001 and October 15, 2001 raised identical claims and these applications  were ultimately rejected and dismissed with prejudice when petitioner failed to put on any evidence to establish his claims at the hearings convened in the Thirteenth Judicial District Court. [SCR Vol. 5, pp. 1152-1165] Petitioner sought review of the District Court's judgment and the Third Circuit Court of Appeals  rejected his

claims noting that petitioner  "... was given an opportunity to present evidence in support of his claims which are not dispositive on the record alone..." but  he "... failed to present evidence, which was subject to cross examination, to prove his claims." *State of Louisiana v. Elrick Gallow*, KH 02-00903 (La. App. 3 Cir. 5/8/2003) [SCR, Vol. 2, p. 410].  Petitioner's writ application raising the same claims [SCR Vol. 2, p. 411] was then rejected without comment by the Louisiana Supreme Court.  *State of Louisiana ex rel. Elrick J. Gallow  v. State of Louisiana*, 2003-KH-2310 (La. 8/20/2004), 882 So.2d 586. [SCR Vol. 3, p. 575][5]

As previously noted, petitioner contends that his claim was not adjudicated on the merits. [see rec. doc. 46, p. 17] That is not the case, however. Dismissals for failing to carry the burden of proof are considered adjudications of the merits of a *habeas* petitioner's claims.  Compare *Woodfox v. Cain*, — F.3d —, 2010 WL 2505580 at *13-14 (5th Cir. 2010) (Concluding that a state court's dismissal citing La. C.Cr.P. art. 930.2[6] is, in the absence of evidence to the contrary, an adjudication on the merits for AEDPA purposes.[7]) Clearly, the Louisiana courts denied relief for substantive

---

[5] The Third Circuit found no error in the District Court's ruling and specifically noted that his failure to present evidence was sufficient to warrant dismissal. The Supreme Court denied writs without comment. Nevertheless, when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991); *Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir.1999)("When faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter.") The last clear state court decision of any substance to address petitioner's claims was this Court of Appeals decision denying writs on post-conviction because petitioner failed to produce evidence in support of his claims.

[6] Although not cited in the District Court's reasons for judgment or the subsequent judgments of the Court of Appeal and Supreme Court, it must be assumed that petitioner's original applications for post-conviction relief were dismissed pursuant to La. C.Cr.P. art. 930.2 which provides,  "[t]he petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted." (Emphasis supplied)  Indeed, that is the clear import of the judgment of the Third Circuit Court of Appeal which noted that the dismissal was appropriate because petitioner "... failed to present evidence ... in support of his claims."

[7] See also *Rivera v. Quarterman*, 505 F.3d 349, 355 (5th Cir. 2007) (State court's determination that a habeas petitioner failed to make a prima facie showing of mental retardation was an adjudication on the merits.)

14

reasons and not procedural ones and therefore, contrary to petitioner's assertions, his claim for relief was adjudicated on the merits.

Since petitioner's *habeas corpus* claims were adjudicated on the merits this Court must utilize AEDPA's standards for review codified at 28 U.S.C. § 2254(d)(1) and (2).  Under these provisions, *habeas* relief is not available  unless the state courts' adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1) and (2).

Under this standard, questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), while pure questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir.2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001).  The state court's decision is contrary to federal law within the meaning of § 2254(d)(1) if the state court applies a rule contradicting the governing law set forth in the Supreme Court's cases, or the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  A state court's factual findings constitute "an unreasonable application of clearly established" Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. The inquiry into the issue of "unreasonableness" is objective. *Id.* at 409-10. A state court's <u>incorrect</u> application of clearly established Supreme Court

precedent is not enough to warrant federal *habeas* relief – the application must also be <u>unreasonable</u>. *Id.* at 410-12 (emphasis supplied).

The state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). In order to obtain *habeas* relief on the ground that the state court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the petitioner must rebut by clear and convincing evidence the presumption that the state court's factual findings are correct. See *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir.2000).

"[U]nder the deferential standard of AEDPA, [federal courts] review only the state court's decision, not its reasoning or written opinion, to determine whether it is contrary to or a misapplication of clearly established federal law." *Catalan v. Cockrell*, 315 F .3d 491, 493 (5th Cir.2002), citing  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002)(*en banc*).

### *Conflict of Interest*

Petitioner implies that his trial counsel was laboring under a conflict of interest.  The evidence he relies upon to establish this alleged conflict of interest is  the purported affidavit of Mr. Muhammad which states in pertinent part, "... I failed to inform Elrick Gallow, the State and the court that a conflict of interest existed in this case, as I am related to the victim, Lorenze [sic] Frank, of the alleged crimes, and that relationship compromised my representation of Elrick Gallow and divided loyalties which rendered me also unable to provide effective assistance of counsel. That after Lorenzo Frank testified on direct examination, I was unable to effectively cross examine him because of the conflict of interest..." [rec. doc. 46, pp. 24-25, ¶ 7-8] These allegations do not establish a "conflict of interest" as that term is understood in the context of the Sixth Amendment. "[A] conflict will exist only when counsel is 'compelled to compromise his or her duty of loyalty or zealous

advocacy to the accused by choosing between or blending the divergent or competing interests of a <u>former or current client</u>.'" *United States v. Culverhouse*, 507 F.3d 888, 892 (5th Cir.2007)(quoting *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir.2006)) (emphasis supplied). There is an actual conflict when an attorney knows that his clients' interests diverge and he must then choose between the interests of multiple clients, or be compelled to compromise his duty of loyalty. *Id.*

In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1180-82, 64 L.Ed.2d 333 (1980). When such an actual conflict adversely affects counsel's performance, prejudice is presumed. [*Id.*] However, this rule of presumed prejudice applies only in the context of cases where <u>multiple representation</u> has been established. *Beets v. Scott*, 65 F.3d 1258, 1265-1266 (5th Cir. 1995) (*en banc*).

Here, even if accepted as true, Muhammad's "affidavit" and petitioner's otherwise unsupported allegations, do not establish an actual conflict under the Sixth Amendment since it is nowhere alleged <u>that counsel ever represented the victim</u>.

### Ineffective Assistance of Counsel

Since the record does not show an actual conflict, petitioner must demonstrate ineffective assistance of counsel under the standard described in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  In order to prevail on an ineffective assistance of counsel claim, a *habeas* petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  *Strickland*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

An attorney's   performance is deficient if it "falls below an objective standard of

17

reasonableness" as measured by professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. The *habeas* court must determine "... whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances." *Neal v. Puckett*, 286 F.3d at 236.  In so doing, the Court must "eliminate the distorting effects of hindsight," *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, and may not assume deficient performance based upon disagreement with strategic choices. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir.1999).

To establish prejudice, the *habeas* petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.  *Id.*  When a petitioner alleges that his guilty plea was the result of ineffective assistance of counsel, he must show that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Bond v. Dretke*, 384 F.3d 166, 167-68 (5th Cir.2004) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).  Thus, when a *habeas* petitioner collaterally attacks the validity of his guilty plea based on a claim of ineffective assistance of counsel, he must also establish that the outcome of the proceeding was unreliable or fundamentally unfair.  *Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir.1994), *cert. denied*, 514 U.S. 1071, 115 S.Ct. 1709, 131 L.Ed .2d 570 (1995); see also *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (emphasizing that *Strickland's* prejudice prong requires the petitioner to demonstrate that "counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair").

### *Voluntary Plea*

Even in those instances where counsel has rendered totally ineffective assistance to a criminal defendant who has pled guilty, the conviction must be upheld if the record otherwise demonstrates that the plea was voluntary.  The voluntariness of a plea can be demonstrated by showing that the defendant understood the charge and the consequences that would befall him should he plead guilty. *DeVille v. Whitley*, 21 F.3d 654, 657 (5th Cir. 1994).

Here, the trial, which was almost completed, was interrupted and then terminated when petitioner, his attorney, and the prosecution entered into a court approved  plea agreement.  The plea agreement was advantageous to the petitioner because it eliminated the possibility of an armed robbery conviction and the imposition of a sentence of up to 99-years at hard labor.  When analyzing a collateral attack on a guilty plea entered pursuant to a plea bargain, "the representations of the defendant, his lawyer, and the prosecutor at [the original plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

As noted above, the allegations made by petitioner throughout these proceedings, including the purported affidavit of Mr. Muhammad,  are conclusory[8] and do not overcome this strong

---

[8] The allegations in what purports to be the affidavit of Mr. Muhammad are conclusory. For example, the affidavit states "... I was the defense attorney <u>ineffectively representing</u> Elrick Gallow in the criminal case..."; "... I admit that my <u>deficient and prejudicial representing</u> ... <u>constitutes ineffective assistance of counsel</u>..."; "... that I failed to inform Elrick Gallow, the State and the court that a <u>conflict of interest existed</u> in this case, as I am related to the victim ... and that relationship <u>compromised my representation</u> ... and <u>divided loyalties</u> which rendered me also <u>unable to provide effective assistance</u>..."; "... after Lorenzo Frank testified on direct examination, I was unable to effectively cross examine him because of the <u>conflict of interest</u>...";  "... <u>deficient performance prejudiced my client's defense</u>..."; and, "... my action alone caused <u>prejudice</u> ... and the <u>outcome of the proceeding would have been different if it was not for my representation</u> of Elrick Gallow." [rec. doc. 46, pp. 24-25]

presumption of verity. The State Court Record, however, establishes beyond any doubt that petitioner's plea was knowing and voluntary as defined above.  The transcript reflects that petitioner's attorney, Mr. Muhammad,  explained the general contours of the plea agreement – that petitioner would plead guilty to aggravated second degree battery and aggravated second degree kidnaping, and, in return, the State would dismiss the armed robbery charge. [SCR, Vol. 5, p. 1123]

Thereafter, the Court engaged in the following colloquy:

> All right Mr. Gallow you have heard what the lawyers said, now if we stop at this stage and you plead guilty in this case ... you're going to waive and give up certain rights which include –  Number One, ... it would be your right to a completion of your trial by a jury you understand because we've already started. I mean you have a right, we can go on and finish this, we can get a verdict from the jury if you want. Two, if convicted,  your right to appeal. Three, if convicted and you appeal and lose, your right to apply to the Supreme Court of Louisiana for a writ of *certiorari* or review. Four, if convicted and you appeal and lose, your right to post conviction relief. Five, your right to be represented by an attorney and if you are a poor person and unable to afford an attorney's services your right to a court appointed attorney at no expense whatsoever. Six, your right to confront and cross examine the witnesses who might be called to testify against you at the continuation of this case, this trial, the balance of this trial. Seven, your right to, if necessary, your right for you to subpoena or compel the attendance of witnesses at your trial when, I guess when you put on your trial, your case, whom you might wish to have testify. Eight, your right against self incrimination meaning your right to remain silent and not testify at your trial without having an adverse interest [sic] drawn therefrom. Nine, your right to the presumption of innocence until or unless overcome by proof beyond a reasonable doubt.
>
> Now you understand all of that and you understand we've, you know, we've gone through at least half of the case, maybe more than half, I don't know but I mean you have a right to keep on and you have all of these rights that I just gave you, you understand that? [SCR, Vol. 5, pp. 1123-1127]
>
>
> To which petitioner responded, "Yes sir." [*Id.*]

Thereafter, the transcript reveals that the court ascertained that petitioner was 27 years old

and had some degree of education.  The Court then asked, "Have you been forced, threatened or intimidated into making this plea of guilty?" To which petitioner responded, "No sir."  The Court then asked if "... anyone made any promises to you in order that you enter this plea of guilty of guilty?" Again petitioner responded, "No sir." The Court then asked, "Do you voluntarily waive all of the above rights and enter this plea of guilty because you are in fact guilty?" Petitioner again responded, "Yes sir." The Court then asked, "Have you fully understood all that I've told you so far?" Petitioner again responded, "Yes sir." Thereafter, based upon the judge's specific inquiries, petitioner advised that he was not suffering from any physical and mental illness which would prevent him from understanding his rights and, that he was not under the influence of drugs or alcohol.  The judge again asked, "Do you fully understand that you do not have to plead guilty at all if you do not want to?" Again petitioner replied in the affirmative. Finally, the Court inquired, "You understand that. You have no reservations whatsoever about pleading guilty?" To which petitioner replied, "No sir." The record further reflects that the penalties for the various crimes were explained to petitioner, and when asked, petitioner advised that he understood the penalties.  [*Id.*, pp. 1128-1129]

Thereafter,  the record reflects that petitioner pled guilty to the charges and that following his plea the trial court noted, "All right I make an affirmative finding of fact that both of your pleas of guilty were made freely, voluntarily, and intelligently and that you want me to accept them and I do accept them." Then, having waived the delays for sentencing, the Court imposed the sentences previously agreed to. [*Id.*, p. 1130]

Having imposed sentence, the Court inquired, "And I'm going to ask you Mr. Gallow and you Mr. Muhammad if both of you affirm and acknowledge for the record that the defendant

21

Gallow's plea was a direct result of this plea bargain and that the defendant Gaollow received exactly what was bargained and that this plea bargain, it's terms and conditions were correctly, succinctly and clearly set forth and encompassed in the sentence of this Court."  The Court then asked both petitioner and Mr. Muhammad if the foregoing statement was correct and both responded in the affirmative. [*Id.*, pp. 1130-1131]

As shown above, the trial court, when it accepted petitioner's guilty plea, concluded that his plea was free and voluntary and his findings on the issue of voluntariness are entitled to the presumption of correctness on federal *habeas* review. See 28 U.S.C. § 2254(e)(1); *Patterson v. Dretke*, 370 F.3d 480, 484 (5th Cir.2004); *Roberts v. Dretke*, 356 F.3d 632, 639 (5th Cir.2004). Petitioner, who presents nothing more than his own conclusory allegations that his plea was involuntary fails to meet his burden to rebut the presumption with clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1).

With regard to the claim of ineffective assistance of counsel, a review of the entire record establishes beyond any doubt that petitioner is unable to establish prejudice as required by the jurisprudence.  As noted above, prejudice in the context of a guilty plea means that absent counsel's deficient performance, the petitioner would have continued to trial and rejected the plea agreement. Here, both petitioner and his attorney affirmed and acknowledged for the record that petitioner's "... plea was a direct result of this plea bargain ..." [SCR Vol. 5, pp. 1130-1131]

Further, petitioner has not demonstrated, either in the State courts, or in this court, that the ultimate result was unreliable. Indeed, a review of the transcript of the State's case reveals ample evidence to support petitioner's convictions.

The proof offered by petitioner both in the State post-conviction proceedings and in these

proceedings is insufficient to warrant *habeas corpus* relief. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir.1983); *Joseph v. Butler*, 838 F.2d 786, 788 (5th Cir.1988).

Further, and more importantly, petitioner has not demonstrated that the state courts' denial of relief was an unreasonable application of law or an unreasonable determination of the facts.  In short, petitioner is not entitled to *habeas corpus* relief.

### 3. Title 28 U.S.C. §2254(e)

Petitioner has requested an evidentiary hearing. As noted above, since this petition was filed after the April 1996 effective date of the Anti-terrorism and Effective Death Penalty Act or AEDPA its adjudication is governed by the provisions of the Act including the provisions of §2254(e) which states in pertinent part –

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and,
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

According to petitioner, "Due to circumstances outside the control of Gallow, none of the issues presented in either [of] his Motion(s) to Withdraw Guilty Plea or Application(s) for Post Conviction Relief were ever adjudicated on the merits in t he state trial court." [rec. doc. 46, p. 17] Petitioner thus admits, and review of the State Court Record confirms,  that the factual basis for

petitioner's claim was not developed in the state courts.

The prohibition contained in §2254(e) applies only if the *habeas* petitioner "failed" to develop the factual basis of his claim. Under current Fifth Circuit jurisprudence, "... for purposes of 28 U.S.C. § 2254(e)(2), a petitioner cannot have 'failed to develop' a factual basis for his claim unless the undeveloped record is a result of his own decision or omission." *McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998)(emphasis supplied).

Here, the record clearly shows that petitioner failed to develop the factual basis for his claim notwithstanding the numerous opportunities he was afforded by the state district court. Petitioner filed two Motions to Withdraw his Guilty Pleas. The district court originally scheduled an evidentiary hearing on petitioner's Motions to Withdraw Guilty Plea on October 5, 2000. That hearing was continued because petitioner's retained post-conviction counsel, Mr. Adebamiji failed to secure petitioner's presence at the hearing. [SCR Vol. 5, pp. 1135-1138] When the hearing, which was continued to December 1, 2000 re-convened, neither counsel nor petitioner appeared and the hearing was continued without date. [SCR Vol. 5, pp. 1139-1141]

Nevertheless, petitioner was allowed to re-urge his claims in an application for post-conviction relief and, he was again afforded an evidentiary hearing which was scheduled for November 15, 2001. When counsel failed to secure the presence of petitioner's trial counsel, Mr. Muhammad,  at that hearing, the Court continued it to the following day to afford petitioner and counsel another opportunity to present evidence in support of his claim. [SCR Vol. 5, pp. 1142-1151] On that date, when Muhammad again did not appear, Adebamiji and petitioner refused to put on ANY evidence and instead suffered the dismissal of the applications for post-conviction relief with prejudice. [SCR Vol. 5, pp. 1152-1165]

24

Petitioner and his attorney were permitted to seek a writ of review in the Third Circuit Court of Appeals.  That court  refused to grant writs noting,  "Relator was given an opportunity to present evidence in support of his claims which are not dispositive on the record alone. Relator failed to present evidence, which was subject to cross-examination to prove his claims. Accordingly, we find no error in the trial court's ruling and deny his application." *State of Louisiana v. Elrick Gallow*, No. KH 02-00903 (emphasis supplied)  [SCR Vol. 2, p. 410].

Thereafter, petitioner filed additional pleadings in the district court and, he was afforded hearings on July 9, 2004 [SCR Vol. 5, pp. 1188-1200], May 3, 2005 [SCR Vol. 5, pp. 1201-1249], February 5, 2009 and March 19, 2009 [SCR Vol. 5, pp. 1268-1272].  At each hearing, petitioner was represented by court-appointed post-conviction counsel.  Nevertheless, neither petitioner nor his court-appointed counsel  made ANY ATTEMPT to provide evidence in support of his post-conviction claims.

Throughout these post-conviction proceedings, petitioner was represented by either retained or appointed counsel.  Even if it is assumed that counsels' continued failure to secure the presence of Mr. Muhammad should not be attributed to petitioner, nevertheless, his failure to adduce ANY OTHER evidence – including his own testimony–  at the seven (7) evidentiary hearings he was afforded must be attributed to him.

Thus, the only "factual basis" for petitioner's claims before this Court is the purported affidavit of Mr. Muhammad [rec. doc. 46, pp. 24-25] and petitioner's self-serving allegations as set forth in his post-conviction and *habeas* pleadings, none of which were subjected to cross examination in the Louisiana court.

A *habeas* petitioner bears the burden of showing by a preponderance of evidence that he was

25

deprived of the right of effective counsel. *Martin v. Maggio*, 711 F.2d 1273, 1279 (5th Cir.1983). The available "evidence" is clearly insufficient to warrant *habeas corpus* relief.   Clearly, petitioner "failed to develop the factual basis" of his claim.   Therefore, he is not entitled to an evidentiary hearing to produce evidence in support of his claim unless he can establish the existence of "(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence;" and then, he must demonstrate that "... the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder   would have found the applicant guilty of the underlying offense." Of course, petitioner's claim neither relies upon a new retroactive constitutional ruling of the Supreme Court nor the recent discovery of the claim's factual predicate.

In other words, petitioner is not entitled to an evidentiary hearing.

### Conclusion and Recommendation

Accordingly,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be  **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed**

legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  See 28 U.S.C. §2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers at Lafayette, Louisiana, July 30, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)